ALBERT *v.* GAMBLE-SKOGMO, INC.

1. EQUITY—MOTION TO DISMISS—EVIDENCE—CLOSE OF PLAINTIFFS' CASE.

The court must consider the evidence in a light most favorable to the plaintiffs in deciding a motion to dismiss plaintiffs' bill of complaint at the close of plaintiffs' case and if such evidence makes a prima facie case then the motion to dismiss should be denied.

2. SAME—MOTION TO DISMISS—EVIDENCE AT CLOSE OF PROOFS.

The court should consider all evidence produced in determining whether a motion to dismiss bill of complaint, made at close of all testimony, should be granted.

3. SAME—DENIAL OF MOTION TO DISMISS—RES JUDICATA.

A court's refusal to grant a motion to dismiss plaintiffs' bill of complaint, made at the close of all testimony is not a final determination of the issues involved in the case as the court

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 313.
[2] 53 Am Jur, Trial § 311.
[2] Objectionable evidence, admitted without objection, as entitled to consideration on demurrer to evidence or motion for nonsuit or directed verdict. 120 ALR 205.

can, at a later date and after further consideration of all evidence, conclude that plaintiffs have not sustained the allegations contained in their bill of complaint.

4. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW—FINDINGS OF COURT.

The Supreme Court hears chancery cases *de novo* but accords great weight to the finding of fact by the trial court as he has a better opportunity of seeing and hearing the witnesses as they participate in the trial of the cause.

5. REFORMATION OF INSTRUMENTS—LEASE OF STORE—ADDITIONS—INSTALLATIONS.

Reformation of lease to *require,* instead of merely *permit,* tenant to make certain installations and addition to store property is not ordered, where trial court weighed all of the testimony as to prior rents, cost of repairs, correspondence between the parties, period of vacancy, and previously proposed lease and concluded plaintiff had failed to establish right to such relief.

Appeal from Gogebic; Sweet (Lucien F.), J., presiding. Submitted October 10, 1952. (Docket No. 41, Calendar No. 45,385.) Decided January 5, 1953.

Bill by George Albert and others against Gamble-Skogmo, Inc., a Delaware corporation, to reform a lease. Decree for defendant. Plaintiffs appeal. Affirmed.

*S. W. Patek* (*Theodore G. Albert,* of counsel), for plaintiffs.

*Charles L. Santini* (*B. E. Larson,* of counsel), for defendant.

SHARPE, J. This is a suit in chancery for reformation of a lease. It is admitted that on April 11, 1944, plaintiffs entered into a lease with defendant corporation for the rental of a business property belonging to plaintiffs, and located in the city of

Ironwood, Michigan, for a period of 5 years commencing June 1, 1944, and providing for certain renewal privileges.

The lease as signed contains the following:

(1) "Lessee may install stairway for customer use to the basement at a place that suits his needs. * * *

(2) "The lessee may build and erect an addition to the rear of this building at any time during the period of this lease;" and

(3) "It is understood that should this addition be built, it becomes the property of the landlord at the expiration of this lease or any renewals thereof, without cost to the landlord; * * *

(4) "Lessee may install celotex or similar ceiling and may plaster or finish the side walls as suits his needs and requirements as soon as government restrictions permit it to be done."

The reformation sought in the instant case is to change the word *may* to *must* in the above part of the lease. In support of their claim for reformation, plaintiffs contend that at the time he, George Albert, signed the lease, he signed 3 printed forms and that there was no typewritten matter inserted upon them; that he did so with the understanding that certain provisions would thereafter be inserted in the blank spaces, and the lease would then be executed by defendant company and a copy mailed to plaintiffs; that the typewriting so inserted is at great variance with the understanding and agreement of the parties in respect to the provision that makes it optional on the part of defendant to make certain repairs and improvements to the premises.

When the cause came on for trial plaintiffs introduced evidence in support of the allegations made in their bill of complaint. Evidence was introduced to show that prior to March 11, 1944, plaintiffs were desirous of renting the premises to a chain store

corporation rather than to local parties, and had solicited leases from at least 2 of such concerns; that on September 4, 1941, plaintiffs wrote defendant company informing them of the availability of their property, but defendant company was not interested in leasing the property at that time. In 1943, defendant company, being desirous of obtaining other quarters for its Ironwood store, entered into negotiations with plaintiff, George Albert, through its employee, Mr. Jennings, who prepared and presented a proposed lease to plaintiffs dated August 6, 1943. On August 7, 1943, plaintiffs, through their attorney, addressed a letter to defendant company, a part of which reads as follows:

"Mr. Albert will not install the stairway in the middle of the building as desired by you, nor will he do any rebuilding under the terms set out in the instrument in question. However, he will agree to the lessee placing the stairs where they wish at their own expense. He will also consent to the lessee to build and remodel an addition as desired, but at the lessee's own expense, and with the title in the addition to be placed in Mr. Albert's name. The only increase in rent, if such addition is made, will be the increase of the insurance and taxes that such addition will entail."

On August 19, 1943, defendant company received a wire from plaintiff, George Albert, stating that he would be in Minneapolis on the following Monday morning. Plaintiff, George Albert, arrived as per schedule and held a conference with a Mr. M. F. Hoben, relative to the lease in issue. During this conference plaintiff signed the lease and a copy of it was mailed to plaintiff a few days later. Plaintiff also introduced evidence showing that in 1925 one-half of the premises were leased for $165 per month; that from 1930 to 1935 the premises were leased for $445 per month, and for the second 5-year term

at the rate of $350 per month; that from September 1, 1940, to February 1, 1942, the premises were rented for $300 per month; that from September, 1942 to March 30, 1943, the premises were occupied by the plaintiff in the conduct of his business. Plaintiff also introduced evidence as to the cost of repairs and remodeling. In 1943 such cost amounted to $1,700.03. In 1944 the sum of $940.04 was expended. The cause came on for trial and at the close of plaintiff's proofs the defendant company made a motion to dismiss the bill of complaint for the following reasons:

"First, that the plaintiffs have not sustained the burden of proof in this matter;

"Secondly, they have not shown any mutual mistake of fact;

"Thirdly, they have not shown any fraud;

"Fourthly, they have not shown any inequitable conduct; they have not shown any misrepresentation; they have not shown any undue influence; they have not shown any misplaced confidence; and

"Lastly, they have not shown any imposition.

"The record as it now stands in this case will not sustain a decree or a finding for the plaintiffs and for that reason we move that the complaint be dismissed."

The trial judge denied the motion and in doing so stated:

"*The Court:* Based upon the testimony of the plaintiff with reference to the meeting between himself and Mr. Hoben on April 11, 1944, at the Minneapolis office of the defendant company and by reason of such testimony the motion must be denied. That testimony is sufficient proof upon the present record to warrant a decree, inasmuch as that testimony would indicate that the plaintiff left the office of the defendant company after signing a lease in blank, so-called, that is, it contained nothing except the

printed portions thereof, believing that he and Mr. Hoben had reached an agreement as to certain things that were to be inserted in the lease and which were not inserted in the lease and which were contrary to the matters that were inserted in the lease; that testimony, standing by itself, indicates a mistake on the part of the plaintiff as to the agreement, the verbal agreement arrived at between him and Mr. Hoben and indicates a mistake on the part of Mr. Hoben as to that verbal agreement or if not such a mistake, then that testimony indicates that Mr. Hoben deceived the plaintiff; in other words, that the defendant, through its agent, Mr. Hoben, committed a fraud. For these reasons the motion must be denied."

At the conclusion of plaintiff's testimony and after the court denied defendant's motion to dismiss the bill, the defendant company offered the evidence of Mr. M. F. Hoben and Bernice A. Green. Mr. M. F. Hoben, a witness produced by defendant company, testified:

"I merely made the statement, after I drew the lease up, that if his building was vacant until he got the price he asked for it it would be vacant a long time. He said, 'Mr. Hoben, you are a prophet, my building is still vacant, I have not been able to rent it and I have come in to do business with you today,' and I asked him to sit down and we started discussing the situation again and we discussed it for a considerable length of time. We finally reached a meeting of the minds on it and I had made some notes on a piece of paper like this (indicating), and I called Mrs. Green, who was sitting directly in front of me just a few feet, and asked her to take notes to prepare this proposed lease. Mr. Albert was sitting right at the edge of my desk so that in dictating to Mrs. Green—I might incidentally state that Mrs. Green in taking my notes just swung around her chair and had her notebook on my desk, so she

was taking notes very close to Mr. Albert and myself. Mrs. Green, being left-handed, was sitting facing toward Mr. Albert rather than towards me because I was on the side. I dictated the terms of this lease as we had discussed and agreed to in our discussion. * * *

"That took some time and when Mrs. Green had completed typing it up she handed the 3 copies to me, she turned around in her chair and handed the 3 copies to me. I took them and gazed over them quickly. Mrs. Green turned back to her work and then completed her morning mail. She did not pay any particular interest for the moment. I handed a copy to Mr. Albert and we began a discussion of the lease proposal as it was prepared. Mr. Albert asked me if he could not get the lease completed while he was here. * * *

"I told him we would go over it and if we found everything all right we would say so. He took the copy in his hand and I proceeded to read the proposed lease to him and I did read it and completed reading it to him and when we had done that he was ready to sign it. I told Mrs. Green that we had this thing completed and would she witness his signature. I handed Mr. Albert a pen that was on the desk and he signed it. The copies were then presented to Mrs. Green, who was then sitting right beside him, and she witnessed his signature. I told him then that I would see if it could be completed, that it depended on whether Mr. Skogmo or Mr. Weiby were in. Mr. Skogmo was then president of the corporation and Mr. Weiby was secretary of the corporation."

Bernice A. Green, a witness produced by defendant company, testified:

"My name is Bernice A. Green. I was married in August of 1943. My husband's name is Ellsworth L. Green. I live in Minneapolis, Minnesota. I have been employed as an employee of Gamble-Skogmo, Inc., since January, 1939. I was in the payroll depart-

ment. I was not married at that time. I was employed there 3 1/2 years. From there I was transferred to the lease department in July of 1942. I have been employed continuously in that department since July of 1942, and am now employed in that department. My immediate superior is William T. Hill. When I was transferred into the lease department, Michael F. Hoben was my superior until he resigned as manager of the department and continued as assistant and I don't recall just exactly when that was. That was just recently.

"*Q.* Your duties in the lease department, while Mr. Mike Hoben was your immediate superior, were what?

"*A.* I handled all the opening and sorting of the mail and all the secretarial work.

"*Q.* All secretarial work, meaning what?

"*A.* Typing of leases and letters, filing, making up of the rentals and seeing that they were sent out.
\* \* \*

"*Q.* Did you prepare this lease that day?

"*A.* Yes, sir.

"*Q.* After the leases were prepared, what did you do?

"*A.* I handed them to Mr. Hoben.    \* \* \*

"*The Court:*    *Q.* Let me ask a question, just when was it, if you remember, that Mr. Albert signed the lease with reference to your typing of it?

"*The witness:*    *A.* It was after I had typed it.

"*The Court:*    *Q.* After you had typed all the typing that now appear on the exhibits that were handed to you?

"*The witness:*    *A.* Yes.

"*The Court:*    *Q.* Had you looked those over?

"*The witness:*    *A.* Yes.

"*The Court:*    *Q.* All that typing was on there at the time he signed it?

"*The witness:*    *A.* Yes, sir."

At the conclusion of all testimony, the trial court entered an order dismissing plaintiff's bill of complaint. The reasons given are found in his opinion:

"In his brief counsel for the plaintiffs urges this court to look at the 'physical facts,' and to consider the reasonableness of the circumstances; the investment of the plaintiffs in this property and the likelihood of their willingness to enter upon the terms stated in the lease here complained of. This court has considered these matters carefully but there are also so-called 'physical facts' which tend just as persuasively to indicate that the lease as it appears in exhibit 8—8A was exactly the agreement and understanding arrived at between the parties on the 11th of April, 1944. Plaintiffs' property had been vacant for months and for months the plaintiffs had been seeking to obtain just such a tenant as the defendant and had, in fact, been negotiating with the defendant over a long period of time endeavoring to interest the defendant in leasing plaintiffs' property. These are facts which must be considered by the court as well as the facts pointed out in the brief of the plaintiffs. Then there is the further circumstance of the lease negotiations had between the parties prior to April 11, 1944. It is a conclusion of this court that 2 proposed leases had been prepared and submitted to the plaintiff, both of which had been turned down and rejected by the plaintiff after considerable discussion and after he had read such leases or they had been read to him. It hardly follows, therefore, that after this sort of an experience between the parties the plaintiff George Albert would place his signature to a set of blank leases and this court cannot find it to be a fact that he did so.

"It is the conclusion of this court that there was no fraud practiced by the defendant upon the plaintiff George Albert and that the inescapable conclusion from all the evidence presented in this case is that the lease as it appears in exhibit 8 and 8A

was and is the agreement arrived at between the parties on the 11th of April, 1944, and that consequently the bill of complaint must be dismissed with costs to the defendant. A decree may be submitted in accordance with this decision."

Plaintiffs appeal and urge that the court's denial of defendant's motion to dismiss plaintiff's bill of complaint, made at the close of plaintiff's testimony and again renewed at the close of all testimony, is an admission of the truth of the facts as presented by plaintiffs, and the court was in error in ruling against plaintiffs at a subsequent date. It is a well-established rule that in deciding a motion to dismiss plaintiff's bill of complaint at the close of plaintiff's case, the court must consider the evidence in a light most favorable to the plaintiffs. If such evidence produced by plaintiffs, in the opinion of the court, makes a prima facie case, then the motion to dismiss should be denied. When such motion is made at the close of all testimony, the court should consider all evidence in determining whether such motion should then be granted. The refusal to grant the motion to dismiss at the close of all testimony is not a final determination of the issues involved in the case. The court can at a later date, and after further consideration of all evidence, conclude that plaintiffs have not sustained the allegations contained in their bill of complaint. The principal issue in this case is whether plaintiffs are entitled to reformation of the lease. The determination of this issue largely turns upon what agreement was entered into in Minneapolis on April 11, 1944, when plaintiff, George Albert, held a conference with Mr. Hoben, representing defendant company.

Plaintiff testified:

"I went to Minneapolis on April 10, 1944. I talked to Mr. Hoben. I left on Sunday night, and

that was Sunday night I went by way of Rhinelander on train. I thought I may see him Monday morning but he was out of town and Tuesday morning we met. That was on April 11, 1944. We met in his office on Washington street in Minneapolis. When I first met him he said, 'What have you in mind?' We went into the matter of the lease of my premises. I discussed the matter with him between 4 and 5 hours. My train left at 1:55. We got through discussing this matter at 12:30, almost 1:00 o'clock.

"*Q.* What discussion did you have with Mr. Hoben regarding this lease?

"*A.* It is a long detail but when he mention he will build to the back and fix up stairway and fix up present basement for their salesroom I give him offer for $200 a month and that they will do all the remodeling and all the building and pay the taxes and extra taxes, whatever taxes charged to the building. Mr. Hoben took it and put it down all we agreed on, build to back 40 by 60, put full basement, solid brick building, not cement block.   *   *   *

"*Q.* What term of lease did you talk about?

"*A.* Consider 5-year lease.

"*Q.* Any renewals?

"*A.* 5 and 5 and 5.

"*Q.* How many 5-year renewals?

"*A.* Three 5-year renewals.

"*Q.* How much rent?

"*A.* $200 a month first 5 years; second 5 years $225 a month; third 5 years $250 a month; and $275 a month for last 5 years, and they pay the taxes.

"*Q.* Did you understand from Mr. Hoben those provisions would be incorporated in this written lease?

"*A.* Yes, that's right.

"*Q.* And did he agree to put those provisions in the written lease?

"*A.* Yes, sir.   *   *   *

"*Q.* As I understood you, there was nothing in that lease except the printed matter and your name when you left?

"*A.* That's right.

"*Q.* Any typewriting at all on the lease when you signed it?

"*A.* None whatever.  \*  \*  \*

"*Q.* About how long after you signed it was it that you received it by mail?

"*A.* Maybe 2 days, maybe a week, I don't exactly remember."

The trial court, in considering the above testimony and other testimony, came to the conclusion that the lease was not changed after plaintiff had signed it.

We hear chancery cases *de novo* and have repeatedly said that the finding of fact by the trial judge is entitled to great weight for the reason that he has a better opportunity of seeing and hearing the witnesses as they participate in the trial of the cause.

We must assume that the trial court weighed all of the testimony, including prior rents received for the building, the cost of repairs, the correspondence between the parties, the period of time in which the building was vacant, as well as the proposed lease of 1943. In our opinion there is competent evidence to sustain the finding of fact made by the trial court. We find no reasons to discredit the conclusions reached by him. The decree is affirmed, with costs to defendant company.

DETHMERS, C. J., and ADAMS, BUTZEL, CARR, BUSH-NELL, BOYLES, and REID, JJ., concurred.