### ATTWOOD BRASS WORKS *v.* AERO-MOTIVE MANUFACTURING COMPANY.

1. Evidence—Admissions—Original Documents—Copies.

It was not error for trial court to admit into evidence, in action by plaintiff subcontractor for work done and materials on 4 parts furnished defendant contractor for pump assembly, the file of the manufacturer containing documents furnished latter by defendant in regard to money defendant should receive from the manufacturer for work done by plaintiff before that type of assembly was abandoned, since defendant should have been ordered to produce a copy of such documents, the effect of such original documents being that the manufacturer agreed to and did pay defendant for such work and constituting an admission by defendant that it had agreed the amount was correct.

2. Work and Labor—Acceptability—Contracts—Pleading—Motion to Dismiss.

Statement in defendant's pleading to the effect that plaintiff's work for which it sought compensation was unacceptable would not justify the granting of defendant's motion to dismiss,

References for Points in Headnotes

[1] 20 Am Jur, Evidence § 442 *et seq.*
[2] 58 Am Jur, Work and Labor § 50.
[3] 20 Am Jur, Evidence § 133.

where plaintiff, in making its quotation to defendant for the work provided that the term "accepted" should be applied to all shipments as to which no discrepancies as to quantity, dimensions or specifications had not been reported within 30 days from receipt and defendant's purchase order did not object to such provision in plaintiff's quotation.

3. SAME—MOTION TO DISMISS—NONJURY CASE—EVIDENCE.

Defendant's motion to dismiss plaintiff's nonjury action for "work done and materials furnished in connection with manufacture of 4 parts defendant ordered for use in a hand-pump assembly, before such assembly project was abandoned, should have been denied, where plaintiff proved a prima facie case, in part, by admissions defendant had made to party for whom the assembly was being manufactured.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted October 5, 1956. (Docket No. 52, Calendar No. 46,928.) Decided February 28, 1957.

Action by Attwood Brass Works, a Michigan corporation, against Aero-Motive Manufacturing Co., a Michigan corporation, for work done and materials furnished. At close of plaintiff's proofs, motion to dismiss granted, and judgment entered for defendant. Plaintiff appeals. Reversed and remanded.

*McCobb, Heaney & Dunn,* for plaintiff.

*Stratton, Wise, Sykes, Early & Starbuck,* for defendant.

KELLY, J. Plaintiff sued defendant for work done and materials furnished, claiming damages in the sum of $2,862.76. The case was tried to the court. At the conclusion of plaintiff's proofs, defendant's motion to dismiss was granted. Plaintiff appeals.

Defendant contracted to supply Republic Aviation Corporation with a hand-pump assembly for use on army aircraft, and defendant subcontracted with

plaintiff to supply 4 of the production parts and special tooling required to produce same.

Plaintiff's secretary and treasurer testified that after the special tooling was completed the parts were manufactured and sent to defendant; that defendant refused to pay for the work done and materials furnished; that as far as he knew the tooling and parts submitted were correct, although there was some correspondence between plaintiff and defendant in regard to claimed defective parts.

The deposition of Republic Aviation Corporation's purchasing agent, Mr. Pye, was taken in New York on July 27, 1954. Mr. Pye testified that he was in charge of the contract between Republic and defendant; that a functional unit was manufactured and sent by defendant to Republic, which was satisfactory; that Republic instructed defendant "to go ahead and complete 500 units;" that about the same time (March, 1953) Republic determined to abandon the pump assembly being made by defendant because "the procurement department's decision that another pump assembly, also designed by Republic, but being considered for manufacture by another vendor, was more economical;" that the procurement department's decision was the only reason why the pump assembly being manufactured by defendant was abandoned; that after giving notice of termination to defendant Republic conducted an audit by its field auditors and that he had before him at the time he testified Republic's file prepared by its field auditors; that defendant was paid $76,122.94 and that $3,386.14 represented costs to defendant for work done by plaintiff; that defendant's letter of May 28, 1953 (incorporated in the deposition), admitted the audit to be correct.

A second deposition was taken of Mr. Pye on July 13, 1955, and he then testified that he had before him

a copy of the deposition that he gave on July 27, 1954, and that:

"On page 4 of that deposition, I stated that our files reflected that parts were subcontracted by Aero-Motive to Attwood Brass Works. * * * I have that file before me today. It is the file of Republic's field auditing department, and is the file that I referred to on page 11 and other parts of my former deposition. It is the only file I used in connection with that former deposition. It is Republic's file of original records covering Aero-Motive's claims against Republic."

Defendant was represented by counsel at the time of taking the depositions and the testimony regarding the above mentioned file was taken subject to objection of hearsay. The file was marked as "plaintiff's exhibit A–1" in the deposition and was admitted in evidence at the trial.

The deposition of Mr. McCahill, Republic's procurement representative, established that he was stationed at defendant's plant during the time defendant was acting as one of Republic's subcontractors; that he also visited plaintiff's plant; that the 4 detail parts on which plaintiff "was to work were castings, as originally called out. At some time in March, 1953, a change, originated by Republic Aviation Corporation, caused one of these parts to be changed from a casting to a detail to be machined from solid aluminum bar stock;" that "all 4 of the parts, one of which may have been changed by part number, were incorporated into the hand-pump assembly which * * * I brought back in the condition in which they were submitted by Aero-Motive."

Republic's file contains a sheet with the following heading in handwriting:

"Republic Aviation Corporation—(Audit Division) Procurement of Material and Tooling made by

Aero-Motive Mfg. Co. from Attwood Brass Works Against R.A.C. Pur. Order 2–23–24998."

This sheet discloses the invoice numbers and dates and that there was an item under heading of "material" for February 16, 1953, in the amount of $8.35 and one under date of March 30, 1953, for $5.02, making a total of $13.37. The same sheet establishes that the total amount for tooling was $3,372.77, and it contains 4 invoice numbers for tooling, all under date of January 28, 1953.

The court commented upon Republic's file, as follows:

"Strenuous objection was made to the admission of this file. * * * Rightly or wrongly, the files were finally admitted. It is the claim of plaintiff's counsel that the Republic Aviation files show an admission on the part of the defendant of a liability to this plaintiff. Nowhere in the file is there any statement made by the defendant that it owed the plaintiff any money. Counsel for the defendant argues that plaintiff is relying upon a presumption upon a presumption; that since the defendant was reimbursed for the plaintiff's bill that a presumption arises that the defendant must have represented that it owed the bill, and from this presumption the plaintiff attempts to create a further presumption that the plaintiff complied with the terms of the purchase orders by producing acceptable parts. There is unquestionably merit to this argument."

The trial court did not err in admitting Republic's file. Plaintiff made an unsuccessful effort to secure from defendant copy of documents that defendant submitted to Republic in regard to money defendant should receive from Republic for work done and materials furnished by plaintiff in the construction of the pump. The court should have ordered defendant to produce a copy of those documents.

Being denied a copy of defendant's documents, the introduction of Republic's file should have been allowed by the testimony of witness Pye establishing that said file was the original record showing facts pertinent to defendant's and plaintiff's work in constructing the hand-pump unit for Republic; in showing that said file reflected invoices submitted by defendant to Republic for work done by plaintiff; in showing that after auditing said invoices and making its own recheck Republic agreed that defendant should be paid the amount requested for services rendered by plaintiff; in showing that said amount was paid, and that the audit as reflected in this file was agreed to by defendant as being correct.

The court's comment that "Nowhere in the file is there any statement made by the defendant that it owed the plaintiff any money," is answered by plaintiff's proof that defendant accepted from Republic payment for the work done and materials furnished by plaintiff to defendant in the construction of the 4 parts of the pump which were received and approved as satisfactory by Republic.

If defendant had the right to invoice Republic for this amount and then receive payment from Republic for the work done by plaintiff and to keep said amount and not pay the amount to plaintiff, that would be a matter of special defense which should have been established by defendant.

Plaintiff's quotation to defendant under date of November 10, 1952, contained the following provision:

"This quotation is based upon your agreeing to consider as 'accepted' all shipments made hereunder, for which discrepancies as to quantity, dimensions, or specifications have not been reported within 30 days from receipt."

On the same day, November 10, 1952, defendant issued the purchase orders to plaintiff, making no objection to the provision in plaintiff's quotation.

On February 7, 1953, plaintiff admitted improper machining of certain parts, and made an offer to defendant to correct this mistake; and, pursuant to said offer, defendant did return these parts and plaintiff issued its credit memo for $17.60 for said returned parts on March 6, 1953. Plaintiff then shipped additional parts, thereby replacing the ones that were returned and the record discloses that no further claim of unacceptability of parts was made by defendant. Defendant in its pleadings did claim that the work done by plaintiff was unacceptable, but such claim made by the pleadings would not establish that fact and could not be accepted by the court to sustain defendant's motion to dismiss. Defendant also in its pleadings refers to the "custom in the trade" to the effect that plaintiff could not recover for tooling if the parts thereby manufactured were unacceptable. This statement in defendant's pleadings would not justify the granting of defendant's motion by the court.

In *Cabana* v. *City of Hart,* 327 Mich 287, 305 (19 ALR2d 333), this Court said:

"In considering the question whether defendant was entitled to a directed verdict, the testimony must be construed as strongly as possible in favor of the plaintiff. *Ortynski* v. *Grand Trunk Western R. Co.,* 307 Mich 61; *Wiles* v. *New York Central R. Co.,* 311 Mich 540."

Also, in *Albert* v. *Gamble-Skogmo, Inc.,* 335 Mich 539, this Court clearly set forth that:

"It is a well-established rule that in deciding a motion to dismiss plaintiff's bill of complaint at the close of plaintiff's case, the court must consider the evidence in a light most favorable to the plaintiffs.

If such evidence produced by plaintiffs, in the opinion of the court, makes a prima facie case, then the motion to dismiss should be denied."

Plaintiff by its proof made a prima facie case, and the motion to dismiss should have been denied.

The order of the lower court dismissing plaintiff's action on defendant's motion to dismiss is reversed and the cause is remanded to the circuit court for further proceedings. Costs to plaintiff.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, CARR, and BLACK, JJ., concurred.

VOELKER, J., took no part in the decision of this case.