## ATTWOOD BRASS WORKS *v.* AERO-MOTIVE MANUFACTURING CO.

1. WORK AND LABOR—SPECIAL TOOLING—ACCEPTANCE OF PRODUCTION PARTS—EVIDENCE.

    Finding of trial court in nonjury action to recover for work done and materials furnished defendant by reason of special tooling required to manufacture certain parts for defendant who had an order for a hydraulic pump assembly, that plaintiff had not shown that it had produced parts as a result of such special tooling which were acceptable, hence, not entitled to recover under an admitted custom of the trade *held*, not against the preponderance of the evidence.

2. APPEAL AND ERROR—NONJURY CASE—FINDINGS OF FACT—PREPONDERANCE OF THE EVIDENCE.

    Findings of fact by a trial judge in a nonjury case, which are supported by a clear preponderance of the evidence will not be disturbed by the Supreme Court on review.

3. SAME—AMENDMENT OF PLEADING.

    The Supreme Court does not permit an amendment of a pleading on appeal, where the proposed amendment would avail nothing to the party proposing it, notwithstanding it has such power pursuant to court rule (Court Rule No 72 [1945]).

4. CUSTOMS AND USAGES—SPECIAL TOOLING—EVIDENCE.

    Evidence adduced in nonjury action whereby plaintiff sought recovery for cost of special tooling incident to the production by it of parts for hydraulic pump assembly *held*, to show that plaintiff recognized trade custom that it would not be entitled to recover until samples of production parts had been approved.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 58 Am Jur, Work and Labor § 60.
[2] 3 Am Jur, Appeal and Error § 900.
[3] 3 Am Jur, Appeal and Error § 841.

Appeal from Kalamazoo; Fox (Raymond W.), J. Submitted April 6, 1960. (Docket No. 17, Calendar No. 48,150.) Decided September 16, 1960.

Action by Attwood Brass Works, a Michigan Corporation, against Aero-Motive Manufacturing Co., a Michigan corporation, for work done and materials furnished. Judgment for defendant. Plaintiff appeals. Affirmed.

*McCobb & Heaney,* for plaintiff.

*Stratton, Wise, Huston, Early & Starbuck,* for defendant.

Souris, J.  Plaintiff sued in assumpsit for work done and material furnished. At the conclusion of plaintiff's proofs, the court granted defendant's motion to dismiss and, upon appeal thereof in 1956 this Court reversed and remanded for further proceedings (347 Mich 693). In January of 1959, after completion of defendant's proofs and plaintiff's rebuttal evidence, the trial court again entered judgment of no cause against the plaintiff.

Plaintiff's declaration alleged defendant's indebtedness to it for work done and material furnished on tools and machine parts; attached copies of invoices and a statement showing the amount owing; alleged that the work and materials were reasonably worth $3,483.34; acknowledged payment by defendant of $594.63 and a credit to defendant of $25.95 and claimed a balance due of $2,862.76. Defendant's answer denied the amount claimed due and asserted as an affirmative defense that there was a custom in the trade whereby, whenever production parts are ordered for which special tools are to be made by the vendor at the purchaser's expense, the purchaser's obligation to pay for the tools does not

arise until the tools can produce production parts complying with. the specifications therefor; that plaintiff never produced parts complying with their specifications; and that, therefore, plaintiff was not entitled to be paid the contract price for either the production parts or the special. tools.

Plaintiff filed a reply admitting the custom in the trade as alleged by defendant, but asserting that "the second run of samples for the defendant was in accordance with the specifications and drawings furnished by the defendant and that the tooling and the parts were accepted by the duly authorized agents and employees of the defendant after making rigid inspection and tests."

Trial commenced before the court without a jury, and plaintiff put in its proofs. These proofs, in essential entirety, included as exhibits defendant's purchase orders; the plaintiff's original quotation, invoices and summary statement of amount claimed due; and certain letters, including a letter dated April 1, 1953, from plaintiff to defendant enclosing copies of the invoices for tooling, noting that the production parts have "now" been approved and requesting payment on said invoices. There was testimony offered that the sample of the finished product (a hydraulic pump assembly) ultimately delivered by defendant to its customer included the part *numbers* descriptive of the parts plaintiff was supposed to manufacture. for the pump assembly. There was also testimony offered that defendant received $76,122.94 from its customer for the work done on the pump assembly before termination of defendant's order with its customer; that defendant supported its charges to its customer with cost data and invoices from its subcontractors; and that defendant had submitted to its customer plaintiff's invoices in the amount of $3,386.14, which sum was included in the $76,122.94 received by defendant. Fol-

lowing several continuances, plaintiff was allowed to introduce a field audit file compiled by defendant's customer in negotiating the termination settlement, in which file there were plaintiff's invoices to defendant which defendant used to support its claim for payment of the aforedescribed $3,386.14. Plaintiff thereupon rested, and defendant's motion for judgment of no cause was taken under advisement by the court.*

While defendant's motion for judgment was under advisement, plaintiff moved for leave to amend its reply to the affirmative defense relating to the trade custom. The amendment sought consisted of deletion of the prior admission of the trade custom and substitution of the following therefor:

"Plaintiff acknowledges that in the absence of agreement between a purchaser and vendor of special tools *regarding time of payment therefor* (emphasis supplied), there is the custom in the trade referred to by defendant. Plaintiff denies that said custom has any materiality in the case at bar because the parties contracted specifically on all matters that might in the absence of such agreement be affected by said custom.

"Plaintiff denies that defendant relied on said custom, denies that the tools it produced failed to conform to specifications; denies that its tools were rejected at any time and denies that defendant rejected any parts except those for which plaintiff issued credit memos and shipped new parts in replacement, and denies all other allegations contained in paragraph C of said answer."

The trial court denied plaintiff's motion to amend its reply and filed a written opinion in which he set forth his reasons and his findings of facts in the following fashion:

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1959 Cum Supp § 27.1461 *et seq.*).—REPORTER.

"Apparently plaintiff relies upon certain credit terms which were arranged between the parties and claims that this is a specific agreement contrary to the custom of the trade. This motion is made after plaintiff's proofs were concluded and the defendant had made a motion for judgment of no cause of action. The defendant objects to the amendment.

"This court finds that the credit terms arranged between the parties do not constitute an agreement contrary to the custom existing in the trade. The court finds that the proofs establish that defendant would pay for the work done and materials furnished according to the credit terms arranged but only if the tools produce a specially designed part which itself meets the specifications.

"Plaintiff by its motion seeks to amend its reply to conform to those proofs. There are, in the opinion of the court, no proofs to negative the custom of the trade nor are there any proofs of any specific agreement to the contrary.

"For the foregoing reasons, plaintiff's motion for leave to amend its reply is denied."

Shortly thereafter, the trial court granted defendant's pending motion to dismiss and entered judgment in its favor. In its opinion, the trial court said:

"The plaintiff has offered no direct proof of the production of parts in accordance with the terms of the purchase order or that the parts made complied with the specifications. Plaintiff's witness testified to the demands made upon the defendant for payment and the contract between the parties. The only other proof offered, besides some correspondence, was the file of Republic Aviation (defendant's customer). * * * It is the claim of plaintiff's counsel that the Republic Aviation files show an admission on the part of the defendant of a liability to this plaintiff. Nowhere in the file is there any statement made by the defendant that it owed the plaintiff any money. * * *

"Under the pleadings in this case, it was incumbent upon the plaintiff to prove that the plaintiff has complied with the purchase orders by producing acceptable parts.   Two or more of the exhibits indicate that objection was made to the parts produced, and nowhere in the record is there positive proof that plaintiff has complied with the terms of the purchase orders.   Plaintiff has proved the existence of the contracts and the demand for payment, but without evidence that plaintiff is entitled to recover, the motion must be granted."

Plaintiff's first appeal to this Court thereupon was taken and resulted in reversal as above noted.   Upon remand for further proceedings, the defendant put in its proofs, the plaintiff put in rebuttal testimony and the trial court thereupon entered judgment, once again, in favor of defendant.   Plaintiff again appeals.

It should be noted that upon remand plaintiff did not renew its motion for leave to amend its reply to defendant's trade-custom affirmative defense, nor did this Court on original appeal grant it that right. As the trial court noted in its opinion supporting its final judgment for the defendant:

"The Supreme Court (on original appeal) makes reference to the allegation in defendant's answer with reference to the 'custom in the trade' to the effect that plaintiff could not recover for tooling if the parts thereby manufactured were unacceptable. *This allegation in defendant's answer is admitted in plaintiff's reply.*   In view of the pleadings, it therefore appears to this court that the question is whether or not plaintiff manufactured such tools as would produce parts meeting the required specifications." (Emphasis supplied.)

The trial court correctly defined the issues, and both parties on remand clearly understood what the issues would be.   Defendant's proofs consisted of

evidence that the production parts furnished by plaintiff did not comply with their specifications; that defendant itself had to custom-make such parts for use in the sample assembly it supplied its customer; and that defendant disclosed these facts to its customer in an effort to recover from it the additional costs defendant had thus incurred, but that the customer paid no more for such parts than the price defendant otherwise would have had to pay plaintiff. Plaintiff's proofs on rebuttal consisted of evidence that the production parts furnished by it did comply with their specifications (no such testimony having been offered in plaintiff's original proofs) and that defendant's agents had advised plaintiff that the parts were acceptable.

In its opinion the trial court carefully reviewed all of the evidence relating to whether or not the parts produced met specifications, whether or not plaintiff's parts were used in the assembled unit delivered to defendant's customer, and whether or not defendant had ever accepted such parts or tools. The trial court concluded:

"The testimony of defendant's witnesses in the opinion of this court clearly establishes that the parts produced by plaintiff corporation were not in fact used on the assembled unit which was approved by Republic Aviation. * * * Witness Miller definitely testified that the 3 parts made by him were on the assembled unit which was approved by Republic Aviation. Witness Rosewarne testified similarly as to the fourth. This court is satisfied and finds that in fact parts produced by and as a result of tooling on the part of the plaintiff for which recovery is sought in this action were not in fact used on the assembled unit. * * *

"There is no question but that plaintiff was advised that an assembled unit had been approved by Republic Aviation, and there was discussion with reference to arrangements for mass production of

parts, but this court cannot find from the evidence that any employee of defendant company ever stated that parts produced by the plaintiff were included in the unit.

"After seeing the witnesses and hearing their testimony, this court feels that it must find that the parts produced by the plaintiff were not used on the assembled unit and that the parts produced by the plaintiff did not meet the specifications and, therefore, under the pleadings the plaintiff is not entitled to recover in view of the admitted custom of the trade."

The plaintiff does not in this appeal assign as error that the court's judgment is against the preponderance of the evidence. In any event, we conclude that it is not.

But plaintiff's appeal presents several questions for review which assume facts contrary to the trial court's findings of fact. Each of the trial judge's fact determinations, thus obliquely challenged, is supported by a clear preponderance of the evidence and will not be disturbed by this Court on review. *Harden* v. *Widovich*, 359 Mich 566. Plaintiff, however, raises another question for review which merits comment. It contends:

"The trial court found that plaintiff admitted defendant's allegation concerning the 'custom in the trade' as controlling the question of acceptance in this case, but he failed to consider plaintiff's amended * * * [reply to defendant's answer] which denied the materiality of the 'custom of the trade' because the relationship of the parties here was covered by written contractual documents."

The foregoing quotation from plaintiff's brief refers to the amendment of its reply which the trial court denied plaintiff the right to make, from which denial no appeal was taken either when the case was originally before this Court or now. In its supple-

mental brief, filed after argument on this appeal, plaintiff suggests that it should be permitted now to so amend its reply. Without denying the power of this Court to permit amendment of pleadings at this stage of the proceedings under Court Rule No 72 (1945), we must conclude that such amendment, in view of the facts of this case as disclosed by the record made below, would avail plaintiff nothing.

Plaintiff's claim, in essence, is that the written quotation it submitted defendant and letters exchanged between the parties subsequent to the issuance of defendant's purchase orders, set forth the parties' specific agreement for payment, thereby removing the transaction from the scope of the admitted trade custom. The written quotation stated the plaintiff's offering price for the production parts and the price to be charged defendant for the necessary tooling to make such parts. It included the following language:

"This quotation is based upon your agreeing to consider as 'accepted' all shipments made hereunder, for which discrepancies as to quantity, dimensions, or specifications have not been reported within 30 days from receipt."

In reply to a letter from defendant concerning defendant's credit, plaintiff's secretary-treasurer wrote defendant, in part, as follows:

"Our terms of sale on tools and patterns are always net cash upon rendering invoice. Ordinarily we allow a 2% 10 day, net 30 basis, but in this instance where we are not furnishing any material and doing the machine work only, our terms will be net cash in 10 days. We are proceeding with the tools necessary for doing the machining with the understand[ing] that you will abide by the terms as outlined above."

It must first be noted that the 30-day provision in the plaintiff's written quotation appears to be inconsistent with "net cash upon rendering invoice" and the "net cash in 10 days" provisions found in its secretary-treasurer's letter. In any event, the language of the quotation refers to receipt of shipments, but this can have meaning only with reference to the production parts (constituting only $71.49 of the plaintiff's total claim) for the reason that the special tooling involved in this case was not to be delivered to defendant but was to be used continuously by plaintiff in the anticipated production runs. Hence, as the quotations related to the price of special tooling, the quoted provision therefrom was inapplicable.

The language in the letter from plaintiff's secretary-treasurer, to the effect that its terms for tools "are always net cash upon rendering invoice" might suggest that by acquiescence thereto defendant deviated from the trade custom and contracted to pay for production tools without requiring samples of the parts to be produced, but subsequent events clearly establish the fact that even plaintiff did not so construe its agreement with defendant. On April 1, 1953, plaintiff's secretary-treasurer again wrote defendant and in this letter he implicitly recognized the applicability of the trade custom involved herein. After stating that he was enclosing copies of the *tooling* invoices, the originals of which had been rendered previously to defendant, he concluded his letter with the following:

"It is our understanding that these parts have *now* been approved; consequently, the 3 invoices totalling $2,791.27 are *now* due for payment. We would appreciate your check in the above-mentioned amount to reach us for banking not later than Monday, April 6th." (Emphasis added.)

As noted in the trial court's opinion, there was some conflict in the testimony as to whether or not employees of defendant had told employees of plaintiff that its parts had been approved. However, the trial court found in favor of defendant on this fact issue, and we will not reverse this finding, there being competent testimony to support it. The fact remains, however, that as late as April 1, 1953, plaintiff's understanding of the agreement with defendant conformed with the pleaded trade custom that payment for tooling would be required only when samples of the parts to be produced by such tooling were approved.

Even if we were to allow amendment of plaintiff's reply to defendant's affirmative defense at this late date, the proofs offered would not support plaintiff's allegation of immateriality of the trade custom.

Affirmed. Costs to defendant.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.