DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.

---

KELLY *v.* MICHIGAN CONSOLIDATED GAS COMPANY.

1. GAS—FIRE—PROXIMATE CAUSE—BURDEN OF PROOF.
   Plaintiffs, gas customers whose home and contents were substantially damaged from fire arising from leak near gas meter, had the burden of proof to establish negligence on the part of defendant gas supplier proximately causing the damage.

2. APPEAL AND ERROR—NONJURY CASES—PREPONDERANCE OF EVIDENCE.
   The Supreme Court will not reverse the judgment of a lower court in a nonjury case unless the evidence clearly preponderates against the findings of the trial court.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur, Gas Companies § 59.
   Gas company's liability for injury or damage by escaping gas. 138 ALR 870.
[2] 3 Am Jur, Appeal and Error § 896.
[3] 24 Am Jur, Gas Companies §§ 56–58.

3. GAS—LEAK NEAR METER—PROXIMATE CAUSE—BURDEN OF PROOF
—PREPONDERANCE OF EVIDENCE.
Finding of trial court in nonjury action by gas customers against
supplier for damages to home and contents that plaintiffs
had failed to sustain their burden of proof of showing negli-
gence of defendant in installing or maintaining gas meter
near which leak was located proximately causing the damage
*held*, not against the preponderance of the evidence, defendant
having claimed that plaintiff husband, an experienced pipe-
fitter, had tampered with the piping during the 10-day interval
between installation of the new meter and date of the fire.

Appeal from Wayne; Hadsell (Philip A.), J., pre-
siding. Submitted October 6, 1960. (Docket No. 32,
Calendar No. 48,325.) Decided January 9, 1961.

Case by Clarence H. Kelly, Mildred Kelly, and
Michigan Millers Mutual Insurance Company, a
Michigan corporation, against Michigan Consolidat-
ed Gas Company, a Michigan corporation, for dam-
ages by explosion and fire caused by gas leak. Judg-
ment for defendant. Plaintiff appeals. Affirmed.

*Donald J. Miller* and *Howell Van Auken,* for plain-
tiffs.

*Dyer, Meek, Ruegsegger & Bullard* (*Robert P.
Duff*, of counsel), for defendant.

KAVANAGH, J. This case involves the alleged negli-
gence of defendant gas company in the installation
or maintenance of one of its gas meters in plaintiffs'
home. Plaintiffs contend a gas leak from the al-
legedly defective meter resulted in an explosion and
fire, causing extensive damage to plaintiffs' home
and contents. The lower court, sitting without a
jury, found plaintiffs had failed to establish negli-
gence on the part of defendant and entered a
judgment of no cause for action. Plaintiffs appeal,
claiming sufficient evidence of negligence had been

established to sustain their burden of proof. They allege the lower court opinion to be against the clear preponderance of the evidence. Other issues involving contributory negligence and imputed negligence were raised, either at the trial level or upon argument to this Court; however, since our decision will be confined solely to the issue of defendant's alleged negligence, any recital or discussion of these other issues will be unnecessary.

The facts are briefly these: On October 23, 1957, defendant installed a gas meter in plaintiffs' residence. This meter replaced a former smaller meter which had recently been installed at the time plaintiffs had converted from oil to gas heat. Various tests were conducted at that time to determine whether the meter installation was proper and that no leak existed.

On October 31, 1957, plaintiffs' contractor, a Mr. Norman Brown, assisted by Mr. Kelly, checked the meter for clocking purposes. At that time no indication or detection of any leak was observed.

Three days later, on November 2, 1957, after having been out most of the day, plaintiffs returned home in the early evening. Mr. Kelly testified that sometime between 9 and 9:30 p. m., he had occasion to go down to his basement to obtain paint and a brush for some work he was performing on the first floor of his home. Upon descending the stairs he smelled gas. Mr. Kelly stated he put his hand around the gas meter and could feel gas escaping. He said he then applied a soap test to the meter, which revealed a leak at the meter cover seam. Mr. Kelly testified he then called his wife to the basement to observe the leak. Her testimony, upon deposition and at trial, was rather conflicting as to where she had observed the leak. She placed it either at the inlet stem base or at the cover seam. Mr. Kelly claims he then called the defendant gas company. He places

the time of the call at 9:30 p. m. Defendant's written records show this call to have been received at 9:36 p. m. The report of this call disclosing the leak was transmitted by defendant to one of its service cars. This second call was received by the service car operator at 9:40 p. m. The operator immediately headed for plaintiffs' home, arriving shortly thereafter. The exact moment of his arrival was disputed. The serviceman's testimony and written record disclose his arrival at 9:50 p. m., while plaintiffs contended he arrived only a moment or two before the fire engines, which arrived at approximately 10 p.m.

After having made their call to the defendant gas company, plaintiffs continued with what they were doing prior to discovery of the alleged leak—Mrs. Kelly watching television and Mr. Kelly painting a screen. Shortly thereafter Mrs. Kelly claimed she heard a "poof" or "roar." Mr. Kelly testified he heard no noise of any kind. Mrs. Kelly said that a few moments after hearing the noise she descended the basement stairs and discovered a fire. She claims she then called her husband, who in turn called the fire department. The Kellys claimed this call was made before the arrival of the gas serviceman. The fire department records show receipt of this call at 9:54 p. m. Defendant's serviceman testified he directed the Kellys to call the fire department after his arrival at the Kelly home.

Plaintiffs claimed negligence on defendant's part in not shutting off the gas as quickly as they were able to do. However, the facts indicate defendant's serviceman made at least 3 attempts to enter plaintiffs' basement but was prevented from doing so because of the thick smoke. Testimony disclosed there was no shut-off valve outside the Kelly residence between the house and the street. The Kellys claim defendant should have shut off the gas at some regional point; however, if such regional shut-off valve

existed such fact was not shown and defendant's serviceman testified he knew of no shut-off in the area of the Kelly home. The gas was finally turned off when a fireman wearing a smoke mask entered plaintiffs' basement and turned the gas off at the meter. No evidence was given that fire-fighting efforts were in any way hampered by the 15-minute delay in turning off the gas after the arrival of the fire department.

Mr. Kelly was an experienced pipefitter. After the fire had been extinguished by the fire department a 24-inch swivel wrench was discovered below the gas meter. Mr. Kelly testified this wrench had been used by a friend to remove oil tanks some weeks before the fire occurred. Witness Norman Brown, the heating contractor, testified he did not see a wrench under the meter on the morning of October 31, 1957, when, with Mr. Kelly, he was checking the meter for clocking purposes, and that he probably would have seen a wrench if one had been there. The jaws of the wrench were so adjusted at the time the wrench was discovered as to make an exact fit on the swivel nut on the pipe inlet stem of the meter. Mr. Kelly denied having tampered with the meter in any way. Defendant contended, and introduced evidence tending to show, the leak was in the inlet stem at the swivel nut and that the crack was caused—and could only be caused—by excessive tightening of the nut with a resultant sprung stem. It was undenied that various appliances in plaintiffs' basement and the newness of the gas furnace gave off gas-like odors. Defendant contended that Mr. Kelly, detecting those odors and concluding there might be a slight gas leak due to an inadequately tightened swivel nut, had attempted to tighten the nut more than it had been and, as a consequence of such action, sprung the inlet stem, causing the leak.

The fire caused extensive damage to the Kelly residence and the contents thereof. Fire insurance covered the cost of the building repair, but not the household goods. The Kellys' insurance carrier, as subrogee, joined as a coplaintiff to recover its building repair outlay. By stipulation the Kellys' uninsured loss on household contents was placed at $3,800.

From the lower court's judgment of no cause for action, plaintiffs Kelly alone appeal.

At trial plaintiffs had the burden of proof to establish negligence on the part of defendant. In its written opinion the lower court expressly found such burden of proof had not been sustained. The court found no negligence by defendant either in the installation or maintenance of the gas meter. The court held it was unreasonable to believe the meter, if defective, would not have appeared as such prior to the fire of November 2, 1957, unless it had been tampered with in some form, otherwise it would have been disclosed by odor of gas prior to the date of the fire.

This is a nonjury law case. This Court has repeatedly stated it will not reverse the judgment of the lower court unless the evidence clearly preponderates against the factual findings of the trial court. *Attwood Brass Works v. Aero-Motive Manfg. Co.,* 361 Mich 236; *Harden v. Widovich,* 359 Mich 566. Here plaintiffs had the burden of proof to establish negligence on defendant's part which was the proximate cause of the damage. The lower court expressly found they failed to meet this burden.

On examination of the entire record we cannot say such finding was against the clear preponderance of the evidence. The lower court's judgment is affirmed. Appellee shall have costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.